# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAWRENCE WATSON )<br>**Plaintiff** )<br> )<br>v. )<br>ELAINE MORIARTY )<br>COMMONWEALTH OF )<br>MASSACHUSETTS )<br>**Defendants** | CIVIL ACTION NO.<br><br>COMPLAINT AND<br>JURY DEMAND AND<br>DEMAND FOR<br>INJUNCTIVE RELIEF |

## INTRODUCTION

Lawrence Watson, herein the Plaintiff, brings this action against the Defendants, First Justice Elaine Moriarty and Commonwealth of Massachusetts for violation of the Plaintiff's civil and other rights under federal and state laws for, among other claims, discriminating against him in his position as a father in a probate matter and for retaliating against him in his effort to receive equal treatment and a fair trial, for failing to protect and enforce the Plaintiff's his civil rights guaranteed by the Constitutions of the United States and the Commonwealth of Massachusetts, for himself and other fathers in probate matters in the borders and under the jurisdiction of the Commonwealth of Massachusetts, and to protect the constitutional rights of children of fathers involved in said matters.

## PARTIES

1. Plaintiff Lawrence Watson is a natural person who is and was, at all times material to this complaint, a resident of the Commonwealth of Massachusetts, a citizen of the United States of America, and male.

submitted the aforementioned motions. Judge Rosalind Miller held with hearing without the Plaintiff present and renewed the order for one year. One provision of the restraining order denied the Plaintiff access to his daughter Shanai Lauryn Watson.

9.  On May 22, 2003 the Plaintiff took the court-ordered drug test and an additional test to compensate for the lab's inability to perform a breathalyzer test in the required time period.

10. During the week of May 26, the Plaintiff spoke to Probation Officer Kathleen Sanford of the Probate Court for Suffolk County. He sought the results of the court-ordered drug tests. He was informed that his tests were negative and that Sherry Walker failed to comply with the order. According to Probation Officer Sanford, Sherry Walker claimed that she was unable to comply with the order due to lack of finances. The Plaintiff informed Probation Officer Sanford that he would offer to pay Sherry Walker's fees for the drug tests on the condition that she reimburse him for the costs if the she failed the test.

11. During the week of June 1 Probation Officer Sanford informed the Plaintiff that Sherry Walker refused the Plaintiff's offer to pay for the drug test because allegedly she refused to take money from him.

12. In early June Sherry Walker took the required drug test and tested positive for marijuana use. She claimed that the positive results were due to her exposure to individuals smoking marijuana in her presence on Mother's Day.

13. On June 13, 2003 the Plaintiff filed motions in Probate Court for custody of his daughter, for a Guardian Ad Litum report, and contempt against Sherry Walker for failing to abide by the May 14th visitation order.

14. On June 22, 2003 Sherry Walker refused to comply with the visitation order of May 14, 2003 and the Plaintiff filed a complaint with the Boston Police.

15. On June 27, 2003 the Plaintiff filed a motion in Probate Court requesting the court to grant him a police escort to retrieve his property from Sherry Walker's apartment.

16. On June 29, 2003 Sherry Walker refused to comply with the visitation order of May 14, 2003 and the Plaintiff filed a complaint with the Boston Police Department.

17. In early July 2003 Sherry Walker tested positive again for marijuana use. She stated that she used the drug once.

18. On July 3, 2003 Sherry Walker filed a motion for child support and late motion for answer and counterclaim. Judge Moriarty scheduled the motion for July 15, 2003.

19. On July 6, 2003 the Plaintiff was required to rely on the Boston Police Department to force Sherry Walker to comply with the visitation order of May 14, 2003.

20. On July 15, 2003 the presiding judge issued an order restraining to Sherry Walker to prevent her from removing the Plaintiff's property from her apartment. Judge Moriarty was absent and another judge presided over the hearing. The Plaintiff

appeared *pro se* and Sherry Walker was represented by Barbara Mitchell of the Greater Boston Legal Services.

21. On July 16, 2003 Judge Moriarty signed an order denying the Plaintiff's June 13th motion for custody and ordered the Family Services Office, herein FSO, to conduct an investigation to determine the more qualified parent, mandatory drug testing for Sherry Walker for at least six weeks, parenting classes for both parties, child support from the Plaintiff in the sum of $200.00 per week , and continued visitation by the Plaintiff of his daughter at the maternal grandmother's house.

22. On July 18, 2003 Sherry Walker's counsel filed an answer and counterclaim to the Plaintiff's June 13th motion for contempt.

23. On July 21, 2003 Probation Officer Sanford mailed the Plaintiff a letter ordering him to attend drug testing for six weeks.

24. On July 29, 2003 Sherry Walker stated to Judge Moriarty that she disposed of the Plaintiff's property remaining in her apartment, then stated that he removed everything and finally claimed that he removed the majority of the property, only leaving damaged items. Judge Moriarty issued a motion to allow the Plaintiff to retrieve his belongings from the Sherry Walker's apartment with a police escort. The session ended at approximately 12:30 p.m. but Judge Moriarty's order would not allow the Plaintiff to retrieve his belongings before 5:00p.m. The Plaintiff objected to the late timing to allow him to retrieve his property.

25. Shortly after 5:00p.m.on July 29 the Plaintiff arrived with two hired movers and a police escort at the Sherry Walker's apartment to retrieve his property.  The Defendant removed the Plaintiff's property from her apartment, leaving only his

freezer. The freezer was mutilated and destroyed. Sherry Walker would not surrender the Plaintiff's telephone or a picture of his daughter that was stolen from the Plaintiff's grandmother and the police escort would not order her to do so.

26. On August 1, 2003 the Plaintiff filed a complaint with police station B-3 for Sherry Walker's violation of the restraining order of July 15, 2003

27. On August 8, 2003 the Plaintiff filed a motion for contempt against Sherry Walker because she removed his property from her address and destroyed the remaining items, despite the court order of July 29th. The Plaintiff also filed motions for reduction of child support, clarification of article 3 of her July 15 order concerning continued drug testing, and a modification of the visitation order because the maternal grandmother was tired of Sherry Walker's failure to deliver the child as ordered in a timely manner.

28. On September 10, 2003 Judge Moriarty denied the Plaintiff's August 8th motion for reduction of child support, stated that her July 15 order did not include the Plaintiff for additional drug testing, and amended the visitation order requiring the Plaintiff to visit his daughter at the maternal aunt's apartment or a supervised visitation center. The Plaintiff requested that his sister Nadena Watson assume the role of supervisor of visitations to replace the maternal grandmother. Sherry Walker stated that she did not want Ms Watson to have the position because Sherry Walker alleged that Ms Watson threatened her on June 22, 2003, requiring her to file a complaint with the police department. The Plaintiff stated that Sherry Walker was lying about the alleged threat against her by Ms. Watson and asked

Judge Moriarty to order Sherry Walker to produce a copy of the police complaint under the penalty of perjury. Judge Moriarty did not respond to the Plaintiff's request for the copy of Sherry Walker's alleged police complaint against Ms. Watson. The August 8th motion for contempt was continued for October 14 due to the Plaintiff's inability to serve Sherry Walker.

29. On September 29, 2003 Sherry Walker filed a motion for an increase in the child support payments.

30. On October 15, 2003 Judge Moriarty dismissed the Plaintiff's motion for contempt, amended the visitation order to allow supervision of the visits by a paternal or maternal aunt provided their suitability is approved by the FSO, ordered the FSO to complete its investigation within 35 days, deferred the Plaintiff's motion for compensation of his stolen property and increased the Plaintiff's child support payments to $240.00 per week. The Plaintiff was represented by attorney Stewart Engel.

31. On October 22, 2004 the Plaintiff was laid off from his job at S&F Concrete.

32. On October 31, 2003 The Plaintiff filed a motion for child support reduction.

33. On November 1, 2003 the Plaintiff received his first unemployment benefits check of $459.00, minus $217.00 for child support payment.

34. On November 15, 2003 Judge Moriarity reduced the child support to $120.00 per week

35. On December 6, 2003 the Plaintiff's unemployment benefits ended and he filed for an extension of the benefits.

36. On January 2, 2004 the Plaintiff filed motions for a restraining order preventing Sherry Walker from bringing his daughter in the presence of her maternal uncle Johnnie Smith, an amendment of the visitation order, continued drug testing for Sherry Walker, modification of the child support payments and waiver of fees and related service costs. The hearing was scheduled for January 20, 2004.

37. On January 9, 2004 Sherry Walker's counsel filed a motion for a continuance of the hearing for January 20 and requested a speedy hearing. Sherry Walker's counsel was notified by the office of Judge Moriarty. The Plaintiff had not served Sherry Walker at that time.

38. On January 13, 2004 Sherry Walker's counsel left a message on the answering machine at the Plaintiff's home, stating that her request for a continuation would be held January 14 in Probate Court. The Plaintiff was not at home because he was in Millbury, Massachusetts attending carpentry training as ordered by his trade union.

39. On January 14, 2004 Judge Moriarty granted Sherry Walker's counsel's request for a continuation. The hearing was scheduled for February 9, 2004. The Plaintiff was absent from the hearing because he was in Millbury, MA attending schooling required by his trade union.

40. On January 20, 2004 the Plaintiff filed a motion to proceed without an attorney because he could not afford to retain the services of attorney Stewart Engel.

41. On February 2, 2004 the Plaintiff filed motion for appointment of counsel and for access to information received from investigation conducted by FSO.

42. On February 13, 2003 Judge Moriarty issued an order denying the Plaintiff's motion's of January 2 and February 2, suspended his visitation rights, ordered him to attend parenting classes and required any further motions from the Plaintiff to be scheduled with Assistant Register Kathleen Kavey. Judge Moriarty did not inform the Plaintiff of his right to appeal the denial of indigency and motion for fee waiver, as required by M.G.L.c261 27D.

43. On February 19, 2004 the Plaintiff filed motions for the recusal of Judge Moriarty and to order the FSO to obtain additional information for its investigation.

44. On February 27, 2004 Judge Moriarty issued an order stating deadlines for both parties to submit arguments concerning the Plaintiff's motions of February 19th.

45. On March 4, 2004 the Plaintiff applied for a fee waiver to attend parent education classes and the request was granted by an assistant register of the Probate Court for Suffolk County, per the guidelines of M.G.L.c261.

46. On March 19, 2004 Judge Moriarty issued an order denying the Plaintiff's motion for her recusal and motion for further investigation by the Family Services Office.

47. On March 23, 2004 Sherry Walker lost an appeal of the Plaintiff's judgment against her in the Small Claims division of Dorchester District Court.

48. On March 26, 2004 Sherry Walker filed a motion in Probate Court to offset the small claims judgment with child support arrears.

49. On April 7, 2004 the Plaintiff applied for and was granted a fee waiver for court tapes and transcriptions from an assistant register of the Probate court for Suffolk County, per the guidelines of M.G.L.c261.

50. On April 13, 2004 the Plaintiff filed a motion in opposition to the Defendant's motion to offset child support arrears, a motion for request of fees for opposing Sherry Walker's motion to offset the small claims judgment, and a motion for reconsideration of child support.

51. On April 14, 2004 the parties appeared in Probate Court to hear Sherry Walker's motion to offset the small claims judgment. Judge Moriarty refused to hear the Plaintiff's motions of April 13th because she stated that they had not been scheduled to be heard that day. At the hearing the Plaintiff submitted documentation to show not only that he was not in arrears in child support payments but also that he had overpaid child support due to logistical errors by the Commonwealth of Massachusetts' Department of Revenue, herein DOR, and excessive child support payment demands by Judge Moriarty. Sherry Walker's counsel argued that the Plaintiff was in arrears because DOR did not deduct payments from Plaintiff's employment check immediately when child support was first ordered in July 2003.

52. Also on April 14, 2004 Probation Officer Kathleen Sanford gave assistant register Kathy Kavey a document to give to Judge Moriarty. When Judge Moriarty began to read the document in court, Sherry Walker's counsel protested that the information was confidential, even though she claimed that she had not seen the document. Judge Moriarty refused Sherry Walker's counsel's request and read the document, which was a letter from the Department of Social Services, herein DSS, noting a recent complaint filed against Sherry Walker in April 2004 for alleged drug use at her apartment.

53. On April 16, 2004 Judge Moriarty issued an order denying Sherry Walker's request to offset small claims judgment, denying the Plaintiff's request for fees, and delaying the Plaintiff's request for reconsideration of child support until trial.

54. On May 4, 2004 the Plaintiff filed motions for reconsideration of child support, reconsideration of custody/visitation, and appointment of counsel.

55. On May 14, 2004 Judge Moriarty issued an order denying the Plaintiff's motions of May 4

56. The Defendant Commonwealth of Massachusetts implicitly tolerated civil rights violations committed by Defenadnt Moriarty and Probate Court officials by failing to fully investigate complaints, reprimand offending individuals who commit said violations and taking the necessary steps to correct said violations. Defendant Moriarty and Probate Court officials thus believed they could violate with impunity constitutional rights of citizens.

57. In January 2004 the Plaintiff contacted the office of Judge Sean Dunphy of the administrative office of the probate courts of the Commonwealth of Massachusetts, concerning the discriminatory acts of Defendant Moriarty. The Plaintiff was informed that such complaints are the responsibility of the Commission on Judicial Conduct.

58. On March 24, 2004 the Plaintiff filed a complaint with the Commonwealth of Massachusetts Commission on Judicial Conduct, stating the discrimination against him by First Justice Elaine Moriarty. Having received no response, the Plaintiff wrote another letter to the CJC on May 11, 2004. On May 14, 2004 the CJC informed the Plaintiff that in its opinion, Judge Moriarty's actions constitute

judicial error and not judicial misconduct. Therefore no investigation would be conducted.

59. On February 8, 2004 the Plaintiff filed a complaint with John O'Brien, commissioner of the Commonwealth's Department of Probation. The Plaintiff filed a complaint against probation officer Kathleen Sanford for her bias in the *Lawrence Watson v. Sherry Walker* case, her failure to comply with Judge Moriarty's orders to interview the paternal aunts for consideration as supervisors of visits, her willingness to interview only Sherry Walker, her family and associates in the FSO investigation, her harassment of the Plaintiff, her false statement that the Plaintiff has an assault & battery case in Georgia, and her failure to allow the Plaintiff access to the information obtained in the FSO investigation. On May 3, 2004 the office of the Massachusetts Trial Court's Commissioner of Probation informed the Plaintiff that it could not find any evidence to substantiate his complaint.

60. On account of the actions of Defendants Moriarty and Commonwealth of Massachusetts, the Plaintiff sustained severe permanent personal and emotional injuries, included but not limited to, loss of liberty, deprivation of fathering, humiliation, emotional distress, lost wages, and physical pain and suffering.

# COUNT ONE

# 14TH AMENDMENT VIOLATION BY FIRST JUSTICE ELAINE MORIARTY

61. The Plaintiff restates the allegations in paragraphs 1 through 60 and incorporates said paragraphs herein as paragraph 61.

62. By actions described in paragraphs 1 through 61, Defendant Moriarty, under the color of law, deprived the Plaintiff of due process, his right to a fair trial, and his constitutional right to be a parent, in violation of the Fourteenth Amendment of the Constitution of the United States and Article 1 of the Massachusetts Constitution

## COUNT TWO

## 14TH AMENDMENT VIOLATION BY THE COMMONWEALTH OF MASSACHUSETTS

63. The Plaintiff restates the allegations in paragraphs 1 through 62 and incorporates said paragraphs herein as paragraph 63

64. The Commonwealth of Massachusetts developed and maintained policies, customs or practices exhibiting discrimination and indifference to the constitutional rights of males involved in probate matters in its borders, causing the violation of the Plaintiff's rights.

65. It was the policy of the Defendant Commonwealth of Massachusetts to allow Defendant judge, other judges of the Commonwealth, court officials, and state department officials to ignore laws, rules and regulations pertaining to the 14th Amendment of the Constitution in probate matters in its borders and uner its jurisdiction. Pursuant to this policy, custom or practice, Defendant

Commonwealth of Massachusetts implicitly tolerated unlawful practices by court officials and court officers including denial of constitutional rights, discriminating against males in probate matters before the Court, failing to investigate fully and adequately citizen complaints against court officers and court officials, failing to train and supervise properly court officials and court officers, and failing to provide safeguards to prevent abuse of citizens' civil rights.

66. The Defendant Commonwealth of Massachusetts' policies, practices or customs, as described in paragraphs 64 and 65, are illustrated by but not limited to the following conduct:

   a. Defendant Judge Moriarty's order and repeated insistence on awarding temporary custody of Shanai Lauryn Watson to Sherry Walker, despite multiple tests by Sherry Walker proving illegal drug use and a history of DSS investigations showing child abuse, child neglect and child endangerment since the early 1990's.

   b. Defendant Judge Moriarty's unwillingness to find Sherry Walker in contempt, despite Sherry Walker's multiple violations of the visitation order of May 14, 2003 and her violation of the restraining order of July 16, 2003.

   c. Defendant Judge Moriarty's restriction of the Plaintiff's accessibility to his daughter, despite any showing of fitness, abandonment or substantial neglect per the 9th **GROSS v STATE OF ILLINOIS (312 F2d 257)**

Wherefore, the Plaintiff requests this Court:

1. Enter declaratory relief that the Defendants have violated the Plaintiff's constitutional and statutory civil rights

2. Award compensatory damages against the Defendants jointly and severally:

3. Award punitive damages against the Defendants:

4. Enter injunctive relief ordering the Defendant Commonwealth of Massachusetts to grant temporary custody of the child Shanai Lauryn Walker to the Plaintiff:

5. Enter injunctive relief ordering the Defendant Commonwealth of Massachusetts to change the venue of Lawrence Watson v. Sherry Walker and enter restraining order limiting accessibility of said proceedings to officers and officials of the Probate Court for Suffolk County

6. Enter injunctive relief ordering Defendant Commonwealth of Massachusetts to reimburse the Plaintiff for child support payments and applicable interest

7. Enter injunctive relief ordering Defendant Commonwealth of Massachusetts to institute safeguards, policies, procedures, training, re-training and education to members at all levels of the probate court system of the Commonwealth with a view to eliminate sexual discrimination within all levels of its rank and its treatment of males in probate matters in its borders and under its jurisdiction

8. Award such relief as deemed just and appropriate

**JURY DEMAND**

The Plaintiff demands a trial by jury on all issues.

Respectfully Submitted,

_____
Lawrence Watson
11 Lucerne street
Boston, MA 02124
(617)282-6181

Dated: May 24, 2004